IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INFORMATION SYSTEMS AUDIT AND CONTROL ASSOCIATION, INC., a California Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Joan B. Gottschall |
| TELECOMMUNICATION SYSTEMS, INC., a Maryland Corporation, and COMTECH TELECOMMUNICATION CORP., a Delaware Corporation, | ) ) ) ) ) ) | 17 C 2066 |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Information Systems Audit and Control Association, Inc. ("ISACA") has sued defendants TeleCommunication Systems, Inc. and Comtech Telecommunications Corp. (together, "TCS"),[1] alleging that TCS breached a contract between the parties. TCS has moved to dismiss the complaint and to compel arbitration of the dispute. *See* ECF No. 37. For the reasons discussed below, the motion is granted insofar as it seeks to compel arbitration but denied insofar as it seeks dismissal.

## **Background**

According to its complaint, ISACA is a nonprofit association that develops global standards and practices for use in industries such as information technology, risk management, and cybersecurity. In 2013, ISACA began to develop an online program for training and

---

[1] In February 2016, TeleCommunication Systems, Inc. was purchased by, and became a wholly owned subsidiary of, Comtech Telecommunications Corp. *See* Am. Compl. ¶ 8.

certifying cybersecurity professionals. In 2014, ISACA entered into a Cybersecurity Content Development and Licensing Agreement ("the Agreement") with TCS according to which TCS was to create for ISACA, on a work-for-hire basis, a cybersecurity certification and training platform that offered online courses, examinations, and practice exercises. ISACA alleges that TCS breached the Agreement by, among other things, failing to produce work of adequate quality; failing to complete its work on time; using ISACA's intellectual property in developing products with third parties; and distributing products to third parties containing ISACA's intellectual property.

ISACA initially filed a two-count complaint against TCS. Count I sought a declaratory judgment stating, *inter alia*, that ISACA owns the materials in question. Count II sought a preliminary and permanent injunction requiring, *inter alia*, TCS to turn the materials over to ISACA and to refrain from delivering the materials to third parties. ISACA subsequently amended its complaint to include several additional causes of action against one of these third parties—Cybrary, Inc. ("Cybrary"), a cybersecurity training company to whom TCS allegedly distributed materials incorporating ISACA's intellectual property and trademarks, which Cybrary uses in certain of its online course offerings.

TCS argues that the Agreement requires that the parties' dispute be resolved through arbitration. Specifically, TCS relies on section 25.19 of the Agreement, which states:

> Without prejudice to either Party's right to seek equitable relief (including, but not limited to, injunction) from a Court of competent jurisdiction, any dispute arising out of or related to this Agreement or the breach thereof that cannot be resolved by negotiation, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") …. Claims for interim, injunctive, or other emergency relief may be arbitrated pursuant to this Section.

Agreement § 25.19, Compl. Ex. 1, ECF No. 1. TCS therefore argues that ISACA's claims should be dismissed and referred to arbitration.

## Discussion

The Federal Arbitration Act (FAA) provides that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). There is no dispute that the first and third elements are present here. The parties join issue solely over whether ISACA's claims fall within the scope of the arbitration clause.[2]

### A. Arbitrability of the Issue of Arbitrability

A threshold question, not addressed by either of the parties, is whether the arbitrability of their dispute is to be determined by the court or by an arbitrator. Both parties apparently assume that the issue is one for the court to decide. It is true as a general matter that "[c]ourts, not arbitrators, are charged with deciding 'gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.'" *Wis. Local Gov't Prop. Ins. Fund v. Lexington Ins. Co*., 840 F.3d

---

[2] The Agreement contains a choice-of-law provision stating that it "shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof." Agreement § 26.20. The court assumes for purposes of this motion that the clause is valid and that it should be applied in interpreting the arbitration provision. *Cf. DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (observing that the "Federal Arbitration Act allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions").

411, 414–15 (7th Cir. 2016) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). This is not so, however, where the parties have "clearly and unmistakably" indicated their intention that disputes concerning arbitrability be decided by an arbitrator. *See, e.g.*, *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 842 (7th Cir. 2002) (same).

Here, the arbitration provision states that "any dispute arising out of or related to this Agreement or the breach thereof that cannot be resolved by negotiation, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Agreement ¶ 25.19. The American Arbitration Association's ("AAA's") Commercial Arbitration Rules expressly state that the issue of arbitrability is to be decided by an arbitrator. *See* Am. Arbitration Ass'n Commercial Arbitration Rules & Mediation Procedures, Rule R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."). Although the Seventh Circuit has yet to address the issue, the vast majority of courts have held that an agreement to arbitrate in accordance with the AAA's Rules clearly indicates the parties' intention to let an arbitrator determine whether their dispute is arbitrable. *See, e.g.*, *Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*, No. 14 C 8457, 2016 WL 4036754, at *6 (N.D. Ill. July 28, 2016) ("Given this AAA requirement that the arbitrator decide 'the arbitrability of any claim,' district courts in this circuit (and courts of appeals in other circuits, including the 1st, 2d, 5th, 8th, 9th, 11th, and Federal Circuits) have consistently held that a clause requiring

arbitration according to AAA Rules requires the arbitrator to resolve arbitrability disputes.") (citing cases).

Nevertheless, since neither of the parties has contended that the issue of arbitrability should be decided by the arbitrator, the court shall address the issue. *Cf. Wagner v. Discover Bank*, No. 12-CV-02786-MSK-BNB, 2014 WL 128372, at *5 n.5 (D. Colo. Jan. 13, 2014) ("The Court recognizes that the question of arbitrability of Mr. Wagner's TCPA claims arguably falls within the arbitration agreement because it implicates the scope of the agreement. Under the plain language of the agreement, either party could have elected to arbitrate the question of arbitrability. But because neither party has represented that they have elected to arbitrate this issue, the Court proceeds to address it here."); *Smith v. EquiFirst Corp.*, 117 F. Supp. 2d 557, 559 n.4 (S.D. Miss. 2000) (addressing the question of arbitrability despite clear and unmistakable evidence in the language of the parties' contract that they agreed that the issue of arbitrability could be submitted to an arbitrator for decision).

### B. Arbitrability of ISACA's Claims

"The FAA contains a general policy favoring arbitration and a liberal federal policy favoring arbitration agreements." *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1159 (7th Cir. 2016) (quotation marks omitted). The presumption in favor of arbitrability is buttressed further where an arbitration provision is broadly worded. *See, e.g.*, *Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers*, 540 F.3d 640, 646 (7th Cir. 2008) ("The presumption of arbitrability is particularly applicable where the arbitration provision is broad."). Hence, "[o]nce it is clear … that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quotation

marks omitted). More specifically, "a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quotation marks omitted).

Here, the parties' contract plainly provides for the arbitration of some issues between them. Indeed, the Agreement's arbitration provision is quite broad, covering any dispute "arising out of or related to" the parties' Agreement. *See, e.g.*, *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1100 (N.D. Ill. 2015) ("In the Seventh Circuit, '[b]road arbitration clauses,' such as ones including 'arising out of or relating to' language, 'necessarily create a presumption of arbitrability.'") (quoting *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999)). Thus, TCS's motion to compel arbitration can be denied only if it can be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gore*, 666 F.3d at 1032 (quotation marks omitted). This standard is not met here.

ISACA's opposition to arbitration rests entirely on the arbitration provision's opening clause, which states that the provision applies "[w]ithout prejudice to either Party's right to seek equitable relief … from a Court of competent jurisdiction." Agreement § 25.19. ISACA interprets this clause to mean that claims seeking equitable relief are not subject to arbitration. Because its claims for a declaratory judgment and injunctive relief are equitable in nature, ISACA contends, the parties' dispute need not be resolved through arbitration. For its part, TCS contends that the exception is intended only to preserve each party's right to seek equitable relief to enforce the arbitrator's findings. *See* Defs.' Br. at 3 n.3.

As an initial matter, it is not clear that ISACA's declaratory-judgment claim can in fact be regarded as equitable in nature. Strictly speaking, such claims are neither equitable nor legal

but instead take on the character of the underlying claim. *See, e.g.*, *Emp'rs Ins. of Wausau v. Shell Oil Co.*, 820 F.2d 898, 900–01 (7th Cir. 1987) ("Declaratory judgments are neither 'legal' nor 'equitable' …. To tell how to classify these beasts, we must evaluate the underlying claim."). Neither party has addressed this issue in any depth. Of course, regardless of how the declaratory-judgment claim is classified, ISACA's claim for preliminary and permanent injunctive relief falls into the equitable category. *See, e.g.*, *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015) ("A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need."). Ultimately, however, the issue of nomenclature is a red herring. As the Seventh Circuit has emphasized, "[w]hether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause." *Gore*, 666 F.3d at 1036. "Were the rule otherwise," the court has explained, "a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims." *Id*. Here, there can be little question that ISACA's claims go to the very heart of the arbitration clause's subject matter. As already noted, the clause covers "any dispute arising out of or related to [the] Agreement or the breach thereof." Both of ISACA's claims are based on TCS's alleged breach of the parties' agreement. *See, e.g.*, Compl. ¶ 1 ("This is an action for a declaratory judgment and preliminary and permanent injunctive relief based on breach of contract."); *see also* Am. Compl. ¶ 1 (same).

In any case, ISACA's proposed interpretation of the equitable-relief exception is untenable. For one thing, ISACA's reading of the clause is inconsistent with the broad language of the arbitration provision. As the clause makes clear, "equitable relief" is not limited to injunctions. *See* Agreement § 29.19 (providing for arbitration of all claims "[w]ithout prejudice to either Party's right to seek equitable relief (including, but not limited to, injunction) from a

7

Court of competent jurisdiction"). Under ISACA's interpretation, therefore, there is no reason why the clause would not extend to remedies allowing a court to award monetary relief such as disgorgement or the imposition of a constructive trust. This would permit a party to obtain from a court essentially the same relief as that otherwise reserved for the arbitrator. It would make little sense to include such an expansive loophole in what is otherwise a sweeping arbitration provision.

It is true that ISACA has not sought monetary relief from TCS. Nevertheless, resolving ISACA's claims would require the court to decide the key substantive questions at issue in the dispute (e.g., whether ISACA owns the property in question). *See, e.g.*, *Clarus Med., LLC v. Myelotec, Inc.*, No. CIV. 05-934 DWF/JJG, 2005 WL 3272139, at *4 (D. Minn. Nov. 30, 2005) ("[T]o determine whether declaratory relief is appropriate, the Court would need to interpret terms of the License and wade into the merits of the underlying dispute …. [I]f the Court were to adjudicate Clarus's requests for declaratory relief, the Court would, in effect, read out the broad arbitration clause of section 20(a)…. [S]o long as a claim was disguised as a declaratory judgment action, that claim could be brought before a court and thus circumvent the very broad language of the arbitration clause."). Placing these issues within the court's purview would run counter to the arbitration clause's purpose, which is precisely to avoid the time and expense associated with litigation. *See, e.g.*, *Preston v. Ferrer*, 552 U.S. 346, 357 (2008) ("A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985)); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir. 1983) (noting that the "purpose of the United States Arbitration Act" is to "mak[e] arbitration a swift, inexpensive, and

effective substitute for judicial dispute resolution"). The fact that ISACA's complaint does not seek monetary relief would not make its claims any easier or less costly to litigate.

For reasons such as these, courts have routinely rejected the argument that ISACA advances here. Rather, courts have consistently construed equitable-relief exceptions like the one in this case as either authorizing courts to issue *temporary* equitable relief once a dispute has been submitted to arbitration, *see, e.g.*, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1286 (9th Cir. 2009) ("[T]he Federal Arbitration Act … does not give a court the authority to issue equitable remedies, such as a temporary injunction, to maintain the status quo between the parties. Thus, it makes sense that if the parties wanted to give themselves the ability to seek temporary equitable remedies in courts while arbitration was ongoing, they would add such a clause to the arbitration agreement."); *Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 213, 218 (S.D.N.Y. 1993) ("[T]he effect of [the arbitration clause's equitable-relief exception] is to make injunctive relief in judicial courts of proper jurisdiction available to the parties in aid of arbitration, rather than … transforming arbitrable claims into nonarbitrable ones depending on the form of relief prayed for. Under that preferable construction, … Remy could seek a preliminary injunction in this Court pending resolution of the merits by arbitration."), or (as TCS argues) as authorizing courts to enforce arbitral awards once arbitration is complete, *see, e.g.*, *Fraser v. Brightstar Franchising, LLC*, No. 16 C 8179, 2016 WL 6442185, at *2 (N.D. Ill. Nov. 1, 2016) ("The equitable relief referenced in the Franchise Agreement that ultimately may need to be obtained from a court would be the type of injunctive relief that would be sought in enforcement proceedings after the mediation/arbitration procedure has been followed."); *Stations W., LLC v. Pinnacle Bank of Or.*, No. CIV.06-1419-KI, 2007 WL 1219952, at *6 (D. Or. Apr.

23, 2007) ("The arbitration provision covers this dispute. Plaintiff's request for any equitable relief will be relevant after the arbitrator issues a decision on the merits of the dispute.").[3]

ISACA's attempt to distinguish these decisions is unpersuasive. For example, ISACA purports to distinguish *Clarus Medical* on the ground that the clause in that case provided that the parties could seek equitable relief "notwithstanding" the arbitration provision, whereas the clause here states that the arbitration provision is "without prejudice" to the parties' ability to seek equitable relief. *See* Resp. Br. at 11, ECF No. 28. According to ISACA, the latter language "strongly evidences the parties' intent to litigate in court claims for injunctive and/or equitable relief" while the former does not. *Id*. ISACA offers no basis for this parsing of the expressions, and none is readily apparent to the court. Similarly, ISACA attempts to distinguish cases such as *Stations West* on the ground that they involved both equitable and legal claims; however, ISACA fails to point to anything in the decisions indicating that the presence of legal claims had any bearing on the courts' analyses.

---

[3] The arbitration provision states that an arbitral "award may be confirmed and enforced in any Court of competent jurisdiction." Agreement § 25.19. Reading the equitable-relief exception as merely granting the court post-arbitration enforcement authority would arguably render the latter clause superfluous. Even if that is so, however, the provision can still be meaningfully interpreted as allowing courts to order equitable relief before or during arbitration. The arbitration provision states that "[c]laims for interim, injunctive, or other emergency relief may be arbitrated pursuant to this Section," *id*., but it does not provide the *court* with such authority. Spelling out a court's power to issue preliminary injunctive relief is perhaps especially important in light of the circuit split over whether such authority is given to courts by the FAA. *Compare Comedy Club*, 553 F.3d at 1286, and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1291 (8th Cir. 1984) ("[I]n light of our determination that the controversy is arbitrable, however, we find that the issuance of injunctive relief abrogates the intent of the Federal Arbitration Act and consequently was an abuse of discretion."), *with Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141 (7th Cir. 1994) (reaffirming circuit precedent holding that a district court may grant "preliminary injunctive relief in the face of arbitration"); *see also Janvey v. Alguire*, 647 F.3d 585, 592 (5th Cir. 2011) (noting circuit split over district courts' authority to issue an injunction while arbitration is pending).

The cases ISACA cites in support of its position are likewise unavailing. Some of these cases, such as *DNB Fitness, LLC v. Anytime Fitness*, LLC, No. 11-cv-4892, 2012 WL 1952662 (N.D. Ill. May 30, 2012), and *SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft*, 563 F.3d 211 (6th Cir. 2009), did not involve arbitration clauses at all: the dispute in *DNB Fitness* centered on an equitable-relief exception requiring the parties to engage in *mediation* prior to initiating arbitration or litigation, 2012 WL 1952662, at *2; and *SunCoke Energy* involved an equitable-relief clause in a *forum-selection* provision and centered on whether the court had personal jurisdiction over a party sued under that clause, 563 F.3d at 213.

To be sure, some of the other cases cited by ISACA involved arbitration provisions. Nevertheless, these decisions are wide of the mark. For example, the language of the equitable-relief exception in *Floorcoverings International, Ltd. v. Swan*, No. 00 C 1393, 2000 WL 528480 (N.D. Ill. Apr. 25, 2000), differs markedly from the language in the arbitration clause here. Among other things, the clause in *Floorcoverings International* provided that disputes were to be arbitrated except insofar as the plaintiff elected to enforce the agreement by injunction, specific performance, or by "judicial process." *Id*. at *3. The language of the exception in this case is less specific (it makes no reference to specific performance, for example) and also makes no reference to "judicial process." The equitable-relief exception in *Robert Half International, Inc. v. Thompson*, No. 98 C 1080, 1999 WL 138849 (N.D. Ill. Mar. 5, 1999), parallels more closely the language of the clause here. *Id*. at *2 ("Any dispute or claim arising out of or relating to Employee's employment or any provision of this agreement, whether based on contract or tort or otherwise (except for any dispute involving application of the injunctive relief provided [by another section of the agreement]) shall be submitted to arbitration."). There, however, the parties agreed that claims for injunctive relief were exempt from arbitration, and the question

before the court was simply whether the plaintiff's claims for injunctive relief had merit or whether they were moot or too speculative to trigger the equitable-relief exception. In any event, ISACA's cases are overshadowed by the great weight of authority to the contrary recounted above. *See, e.g. Fraser*, 2016 WL 6442185, at *2; *Stations W.*, 2007 WL 1219952, at *6; *Clarus Med.*, 2005 WL 3272139, at *4; *Remy Amerique*, 816 F. Supp. at 218.

In short, the court is unable to say "with positive assurance" that the arbitration clause in the parties' Agreement "is not susceptible of an interpretation that covers the asserted dispute." *Gore*, 666 F.3d at 1032 (quotation marks omitted). ISACA's claims against TCS must therefore be decided via arbitration.[4] Nevertheless, the court declines to dismiss ISACA's claims. The Seventh Circuit has repeatedly stated that actions should be stayed during arbitration in the event that arbitration fails fully to resolve the controversy. *See, e.g.*, *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005) ("We have noted that the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright.") (citations omitted); *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 721 (N.D. Ill. 2014) ("The Seventh Circuit has held that district courts should retain jurisdiction over a suit that is referred to another forum for resolution

---

[4] ISACA concludes its brief by arguing that the Agreement requires any arbitration to be conducted in Anne Arundel County, Maryland, and that this court consequently lacks jurisdiction to compel the arbitration. It is true that "if an arbitration clause contains a choice of venue provision, only a court within the same district of that venue can enter an order compelling arbitration." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011). However, the arbitration clause requires arbitration to be conducted in Anne Arundel County only when arbitration is initiated by ISACA; where arbitration is initiated by TCS, it is to take place in Cook County, Illinois. *See* Agreement ¶ 25.19, Pl.'s Compl., Ex. 1, ECF No. 1 ("In the event that TCS initiates arbitration, TCS shall do so in the [sic] Cook County, Illinois and ISACA agrees to submit to the jurisdiction of the State of Illinois. In the event that ISACA initiates arbitration, ISACA shall do so in Anne Arundel County, Maryland and TCS agrees to submit to the jurisdiction of the State of Maryland."). Because arbitration of this dispute has been initiated by TCS, not ISACA, the provision requiring arbitration in Anne Arundel County is not applicable.

of an issue. District courts should await the outcome of arbitration before dismissing a suit 'to spare the parties the burden of a second litigation should the arbitrators fail to resolve the entire controversy.'" quoting *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002))). Thus, the court grants TCS's motion insofar as it seeks to compel arbitration but denies the motion insofar as it seeks dismissal of ISACA's claims.

**C.     Cybrary**

As noted above, after TCS filed its motion to compel arbitration, ISACA amended its complaint to include several causes of action against Cybrary. Specifically, the amended complaint seeks to hold Cybrary liable for state and federal trademark infringement; state and federal unfair competition; and violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 501/1 *et seq*. These claims are independent of ISACA's claims against TCS. As a jurisdictional matter, ISACA's claims against Cybrary are based on the court's federal-question jurisdiction, 28 U.S.C. § 1331, while its claims against TCS invoke the court's diversity jurisdiction, 28 U.S.C. § 1332. Moreover, Cybrary is not a party to the agreement between ISACA and TCS. At the same time, however, ISACA's claims against Cybrary are factually related to its claims against TCS. As a result, it is uncertain what effect, if any, arbitration of ISACA's claims against TCS might have on ISACA's claims against Cybrary. At this juncture, Cybrary has yet to file an appearance in the case. Once Cybrary has done so, the parties will have twenty-one days within which to confer and inform the court of their position(s) regarding how the litigation should proceed.

**D.     Preliminary Injunction**

Lastly, after filing its original complaint, ISACA separately moved for a preliminary injunction seeking essentially the same relief as that sought in Count II of its complaint. For completeness, the court addresses the motion here.

"To win a preliminary injunction, a party must show that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (quotation marks omitted). "If the moving party makes this threshold showing, the court 'weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied.'" *Id.* (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011)).

As TCS points out, ISACA fails to support its motion with anything beyond the complaint's allegations and the assertions in its brief. This falls well short of the showing necessary to justify issuance of a preliminary injunction. *See, e.g.*, *Clarus Transphase Sci., Inc. v. Q-Ray, Inc.*, No. 06 C 4634, 2006 WL 4013750, at *12 (N.D. Ill. Oct. 6, 2006) ("The drastic remedy of a preliminary injunction cannot be granted on the basis of unsupported, tendentious conclusions in a brief."); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2949 (3d ed. 2005) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction. Affidavits are appropriate on a preliminary-injunction motion and typically will be offered by both parties.").

Further, in addition to preliminary injunctive relief, ISACA's motion seeks declaratory relief. In particular, ISACA seeks a declaration that it owns the materials at issue in the case.

This would require nothing less than a determination on the ultimate merits of ISACA's suit against TCS. Needless to say, it would be impossible for the court to meaningfully address such issues on the basis of the undeveloped record in this case.

ISACA points out that it has moved for expedited discovery and maintains that this will furnish it with evidence to support its motion. But this merely underscores the fact that, at present, ISACA lacks any competent evidence on the basis of which preliminary injunctive relief might be awarded. Nor is this court the only means by which ISACA may obtain a preliminary injunction. Rather, the arbitration clause expressly empowers the arbitrator to order preliminary injunctive relief. *See* Agreement § 25.19 ("Claims for interim, injunctive, or other emergency relief may be arbitrated pursuant to this Section.").

For these reasons, ISACA's motion for declaratory relief and a preliminary injunction is denied. In light of the court's decision regarding arbitration of ISACA's claims, its motion for expedited discovery is denied as moot.

## CONCLUSION

For the reasons discussed above, TCS's motion to dismiss and compel arbitration [23] is granted insofar as it seeks to compel arbitration but denied insofar as it seeks dismissal of ISACA's claims. ISACA's motion for declaratory relief and preliminary injunction [10] is denied, as is ISACA's motion to expedite discovery [8]. The case is stayed. Within twenty-one days of Cybrary's appearance in the case, the parties are directed to submit a statement informing the court of how they intend to proceed.

Date: June 23, 2017            /s/

                                                     Joan B. Gottschall
                                                   United States District Judge